IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

LISA J. CROUCH                                                                              PLAINTIFF

v.                                          NO. 3:14-cv-00078 JJV

CAROLYN W. COLVIN, Acting Commissioner                              DEFENDANT
of the Social Security Administration

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lisa J. Crouch ("Crouch") began this case by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").[1] After considering the arguments of counsel made during a hearing and reviewing the record, the Court finds that the ALJ's findings are supported by substantial evidence on the record as a whole.

Crouch maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole and offers two reasons why. Crouch first maintains that her residual functional capacity was not properly assessed because the ALJ improperly discounted the opinion of Melissa Yawn, M.D. ("Yawn"), Crouch's treating physician.

A treating physician's medical opinion is given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and

---

[1]The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

is not inconsistent with the other substantial evidence in the record. See Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006) (internal quotations omitted). The ALJ may discount or even disregard a treating physician's opinion if "other medical assessments are supported by better or more thorough medical evidence or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." See Id. (internal quotations omitted).

In assessing Crouch's residual functional capacity, the ALJ considered a medical source statement prepared by Yawn on June 13, 2012. See Transcript at 374-375. Yawn represented in the statement that Crouch's impairments are such that she can lift less than ten pounds, stand and/or walk for a total of one hour in an eight-hour workday, and sit for a total of four hours in an eight-hour workday. The ALJ accorded "little weight" to Yawn's opinion because it was inconsistent with her own treatment records and inconsistent with other evidence in the record. See Transcript at 19.

The ALJ's decision to accord little weight to Yawn's opinion is not something the Court takes lightly. A treating physician is "'usually more familiar with a claimant's medical condition than are other physicians ...'" See Thomas v. Sullivan, 928 F.2d 255, 259 n.3 (8th Cir. 1991) [quoting Schisler v. Heckler, 787 F.2d 76, 81 (2nd Cir. 1986)]. In this instance, though, substantial evidence on the record as a whole supports the ALJ's decision to accord little weight to Yawn's opinion.

The ALJ could and did discount Yawn's opinion because it is inconsistent with her own treatment records. The Commissioner represents, and the Court accepts, that Yawn

first saw Crouch in November 2011. See Transcript at 322-323.[2] At that time, Yawn noted Crouch's history of uncontrolled diabetes. Yawn diagnosed Crouch with diabetes mellitus and neuropathy. Yawn prescribed what can fairly be characterized as conservative treatment. She increased the dosage of some of Crouch's medication and counseled her to continue taking the medication. Yawn also encouraged Crouch to "diet and exercise." See Transcript at 323.

Yawn appears to have seen Crouch next on June 13, 2012, for a follow-up visit. See Transcript at 387-388. Yawn again diagnosed diabetes mellitus and neuropathy. She encouraged Crouch to continue taking insulin and noted that the Lyrica she was taking for neuropathy was helping. There is nothing in Yawn's progress notes from this visit to support the opinion she offered in the medical source statement, a statement prepared by Yawn the very same day.

---

[2]Yawn's progress notes from the November 2011 visit indicate the reason for Crouch's visit was "new pt/est," see Transcript at 322, which the Court understands to mean "new patient/establish care." It is not impossible, though, that Yawn had seen Crouch earlier. For instance, Yawn may have seen Crouch in January 2007. See Transcript at 347-348. The test results accompanying the progress notes from the January 2007 visit reflect that the "ordering provider" was "Yawn, Melissa." See Transcript at 350-352. At that time, Crouch reported, inter alia, a history of uncontrolled diabetes, and the attending physician, possibly Yawn, confirmed the diagnosis. The attending physician prescribed conservative treatment in an attempt to control the symptoms associated with the diabetes.

It is also possible that Yawn saw Crouch in October 2011. See Transcript at 324-325. The test results accompanying the progress notes from the October 2011 visit reflect that the "ordering provider" was "Yawn, Melissa." See Transcript at 326-328. At that time, Crouch presented complaining of fever and body aches. The attending physician, possibly Yawn, diagnosed mononucleosis and an urinary tract infection, and prescribed conservative treatment.

The ALJ could and did also discount Yawn's opinion because it was inconsistent with the results of an EMG/nerve conduction study performed in January 2011. See Transcript at 256-257. Mark L. Cunningham, M.D., reviewed the results of the EMG/nerve conduction study and noted that it revealed only "mild generalized peripheral neuropathy" in Crouch's left leg. See Transcript at 257.

The ALJ found that Yawn's opinion was inconsistent with Crouch's treatment history for diabetes mellitus and neuropathy. For instance, Craig McDaniel, M.D., ("McDaniel") saw Crouch in August 2011 for a "follow-up of [her] insulin-dependent diabetes and ... lab tests." See Transcript at 315. He noted that she had not been checking her blood sugars faithfully. He also noted that she had neuropathy, but the Cymbalta she was taking did not help. He reviewed the lab results and noted that they appeared "very good except her diabetes is NOT well controlled at all." See Transcript at 310. [Emphasis in original]. He encouraged her to continue her current medication, check her blood sugar three times a day, and quit smoking.

McDaniel saw Crouch again in September 2011. See Transcript at 307. He noted that she was only checking her blood sugar once a day, not three times a day as he recommended. He adjusted her medication and noted the following: "spent a long time in the exam room explaining to her [a] proper diet for a diabetic, eating frequent small meals and limited carbohydrates in her diet. We talked about exercise such as walking 20 minutes twice a day." See Transcript at 307.

The ALJ found that Yawn's opinion was also inconsistent with the findings of a consultative examiner. In December 2011, Crouch was seen for a consultative

examination by Bruce W. Randolph, M.D. ("Randolph"). <u>See</u> Transcript at 356-358. He found that Crouch could only lift and carry "at least 15 pounds" and would be able to "sit and intermittently stand and walk every 30 minutes as needed." <u>See</u> Transcript at 357. He also found, though, that she had a normal gait, a normal range of motion in her neck, that a back exam was normal, and that she had negative straight leg raises. Regarding her upper extremities, he found that she had a normal range of motion in her shoulders, elbows, wrists and fingers; normal grip strength and dexterity in both hands; some flexibility in her hips; and a normal range of motion in her ankles. He additionally found the following: "She is able to reach, grasp, and perform fine manipulation with her hands. She can walk on her heels and toes. She can stand on one leg. She can squat. She can bend and twist." <u>See</u> Transcript at 357.

Crouch offers a second reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. She maintains that there is no medical evidence to support the assessment made of her residual functional capacity.

The ALJ is obligated to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." <u>See</u> <u>Brown v. Barnhart</u>, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. <u>See</u> <u>Wildman v. Astrue</u>, 596 F.3d 959 (8th Cir. 2010).

The ALJ considered, <u>inter alia</u>, the medical evidence in assessing Crouch's residual functional capacity. He noted that her physical examinations were essentially normal and the EMG/nerve conduction study revealed only mild neuropathy. He found that she

retained sufficient residual functional capacity to perform the full range of light work.

Substantial evidence on the record as a whole supports the ALJ's assessment of Crouch's residual functional capacity. No one piece of medical evidence conclusively establishes her residual functional capacity, but the medical evidence, when viewed collectively, supports his assessment. He relied on the results of the EMG/nerve conduction study, which revealed only "mild generalized peripheral neuropathy." He also relied on her inconsistent treatment history and the findings made, and the conservative treatment recommended by her physicians. For instance, McDaniel's findings are largely unremarkable, save his notation that Crouch's diabetes was uncontrolled. He nevertheless recommended largely conservative treatment for her impairments. The ALJ also relied on many of the findings made by the medical professionals at the NEA Baptist Clinic and NEA Hilltop Clinic, one of whom was Yawn. Giving her progress notes a fair reading, the ALJ could construe them as he did, that is, largely unremarkable save her uncontrolled diabetes.

"A disability claimant has the burden to establish her [residual functional capacity]." See Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) [internal quotation and citations omitted]. In this instance, Crouch failed to carry her burden and show that her residual functional capacity was more restricted than that found by the ALJ.

Given the foregoing, there is substantial evidence on the record as a whole to support the ALJ's findings. Crouch's complaint is therefore dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 28th day of April, 2015.

                                                   /s/ Joe J. Volpe
                                                   JOE J. VOLPE
                                                   UNITED STATES MAGISTRATE JUDGE